**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HOWARD FLEISHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 00414 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CONTINENTAL CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Howard Fleishman alleges that his former employer, Defendant Continental Casualty Company, fired him in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*[1] Continental moves for summary judgment on all counts. R. 66. For the reasons discussed below, Continental's motion is granted.

**I.**

In deciding this summary judgment motion, the Court views the evidence in the light most favorable to Fleishman. Continental is a member of, and provides property and casualty insurance operations for, the CNA Insurance Companies. R. 68, Def.'s Stmt. of Facts (DSOF) ¶ 2. In 1984, Continental hired Fleishman as a trial attorney in its Chicago Staff Counsel Office. *Id.* ¶ 3. As a trial attorney at Continental,

---

[1]This Court has subject matter jurisdiction in this federal-question case under 28 U.S.C. § 1331.

Fleishman defended workers' compensation claims filed against Continental's insureds. *Id.* In 1998, David Izzo became the Managing Trial Attorney for Continental's Chicago Staff Counsel Office. *Id.* ¶ 4. Izzo supervised the attorneys in the Office, including Fleishman. *Id.* ¶ 5. Izzo reported to Jacqueline Johnson, Assistant Vice President of Staff Counsel, who oversaw Continental's Chicago Staff Counsel Office. *Id.* ¶ 6.

In July 2003, Fleishman took a medical leave of absence due to a brain aneurysm. DSOF ¶ 7. His medical condition caused him to take intermittent leaves of absence for about one year. *Id.* Fleishman returned to work in June 2004. *Id.* According to Fleishman, Izzo approached him in 2004 and offered him an option to retire with a severance package. R. 87 (Pl.'s Resp. DSOF) ¶ 11. Fleishman was not interested in retiring and continued to work as a workers' compensation attorney at Continental. *Id.*

In the first quarter of 2005, Continental created a Major Case Unit (MCU) for the purpose of handling high-value claims, such as workers' compensation claims with potential losses exceeding $250,000. DSOF ¶ 12. Fleishman was assigned to defend workers' compensation claims through the MCU. *Id.* Thus, the MCU Claims Department became one of Fleishman's internal customers. *Id.* ¶ 13. The MCU was led by Todd Lewis (Claims Director) and Nanette Husnick (Claims Manager). *Id.* Fleishman also had several customers outside of the MCU. *Id.* ¶ 14.

In mid-2005, Izzo began receiving complaints from Fleishman's customers about Fleishman's work performance. DSOF ¶ 20. Izzo investigated, and determined that Fleishman's written reports were not timely or thorough. *Id.* ¶¶ 21-22. Fleishman's

2

2005 performance evaluation (completed by Izzo) reflects the performance problems. *Id.* ¶ 28. Izzo and Assistant Vice President Johnson continued to receive complaints about Fleishman's performance in 2006. *Id.* ¶¶ 23-25. For instance, Claims Manager Husnick complained to Johnson that Fleishman's reports were not thorough and Fleishman's approach to handling claims was not sufficiently aggressive. *Id.* ¶ 23. Rina Patel, a non-MCU customer, told Izzo that she did not want Fleishman to work on files for a certain client because Fleishman's performance was so unsatisfactory. *Id.* ¶ 25. Patel requested that these files be transferred to another workers' compensation attorney in the Staff Counsel Office. *Id.*

In September 2006, Izzo placed Fleishman on a Performance Improvement Plan (PIP). DSOF ¶ 35. The PIP indicated that if Fleishman failed to make significant improvements within sixty days, he may be fired. *Id.* ¶ 36. A few months later, Claims Director Lewis complained to Izzo and Johnson that Fleishman's reports lacked useful analyses and recommendations. *Id.* ¶ 40. In January 2007, Lewis and Husnick notified Izzo that they no longer wanted Fleishman to work on any MCU cases. *Id.* ¶ 43. Izzo decided that it was time to terminate Fleishman's employment at Continental. *Id.* ¶ 46. Izzo consulted Johnson and Lisa Harrell, Assistant Vice President in Human Resources, and they agreed that Izzo's decision to fire Fleishman was appropriate. *Id.* Fleishman was fired on January 25, 2007. *Id.* ¶ 47.

## II.

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent. Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). The evidence presented at this stage must comport with the Federal Rules of Evidence and be admissible at trial, *United States v. 5443 Suffield Terrance, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010), or it must consist of affidavits or declarations "made on personal knowledge, set[ting] out facts that would be admissible in evidence, and show[ing] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The court does not assess the credibility of witnesses or weigh evidence, *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005), and will not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.

The Age Discrimination in Employment Act (ADEA) prohibits employers from discriminating against workers who are 40 or older on the basis of their age. 29 U.S.C. § 623(a)(1), 631(a). An employee suing under the ADEA may show discrimination directly or indirectly. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010). Fleishman has chosen the direct method and can meet his burden of proof by "offering direct evidence of animus – the so-called 'smoking gun'– or circumstantial evidence which establishes a discriminatory motive on the part of the employer through a longer chain of inferences." *Id.* at 297-98; *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1118 (7th Cir. 2009) ("Under the direct method, the inference that the employer acted based on the prohibited animus has to be substantially strong."). Fleishman relies on the latter approach, and, therefore, may present any of three broad types of circumstantial evidence: (1) evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees over the age of 40, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) evidence showing that Continental systematically treated other, similarly situated employees under 40 years old better; and (3) evidence that Fleishman suffered an adverse employment action and that Continental's justification is pretextual. *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011) (internal citations omitted). "Whatever circumstantial evidence is offered, however, must point directly to a discriminatory reason for the employer's action." *Van Antwerp*, 627 F.3d at 298 (quotation omitted); *see also Petts v. Rockledge Furniture*, 534 F.3d 715, 720 (7th Cir.

5

2008) (a plaintiff relying on circumstantial evidence must construct a convincing mosaic that allows a jury to infer intentional discrimination by the decisionmaker).

Here, Fleishman alleges that two remarks made by his supervisor, David Izzo, are enough circumstantial evidence of age discrimination to defeat summary judgment. Pl.'s Br. at 11. A remark can provide an inference of discrimination when it was "(1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Hemsworth v. Quotesmith.com*, 476 F.3d 487, 491 (7th Cir. 2007). Fleishman first points to the instance in 2004 when Izzo asked Fleishman if he wanted to retire. This remark, however, was made about three years before Izzo made the decision to fire Fleishman. Not only does the sheer passage of time undermine the inference of discrimination, without more there is no connection between the content of the remark (asking whether Fleishman wanted to retire) and the decision to fire him. This remark does not raise an inference of discriminatory intent.

The second comment was allegedly made in 2005 – two years before Fleishman was fired. Fleishman claims that when he and Izzo met to discuss Fleishman's performance evaluation, Izzo informed him that Assistant Vice President Jacqueline Johnson decided that Fleishman would not receive a raise or bonus that year. Pl.'s Resp. DSOF ¶ 29. Referring to Johnson's decision, Izzo stated, "hey, she's out to get me, too." *Id.* Again, this remark was made long before Izzo decided to fire Fleishman. *See Hemsworth*, 476 F.3d at 491 (concluding that president's comment that the employee who had suffered a stroke looked tired and old was not sufficient evidence of

6

discrimination because comment was made more than a year before employee's termination); *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 910-11 (7th Cir. 2002) (finding supervisors' statements "nearly two months" before employee's termination were not contemporaneous to the termination and thus were not evidence of discrimination). Moreover, "she's out to get me, too" is an ambiguous remark in this context, where (even under Fleishman's version of events) there are no other facts to suggest that Izzo was complaining that Johnson was engaging in age discrimination, and that in turn Izzo was somehow admitting that Izzo too was discriminating on the basis of age. Even when viewed in the light most favorable to him, Fleishman has not shown any connection between Izzo's comment and his firing. Thus, this comment is insufficient to raise an inference that Izzo engaged in age discrimination.

Finally, Fleishman argues that Izzo's remark imputes discriminatory animus on behalf of Johnson. Fleishman claims that Izzo's comment related to how Johnson was going after Izzo and Fleishman because they were both over the age of 40. Pl.'s Resp. DSOF ¶ 29. Indeed, in some cases, statements made by someone involved in the decisionmaking process serve as evidence of discrimination, even if the speaker was not directly involved in the adverse employment action. *See Makowski v. SmithAmundsen LLC*, – F.3d –, 2011 WL 5443617, at *4-5 (7th Cir. Nov. 9, 2011). Here, Izzo consulted Johnson about Fleishman's work performance in 2006, and Johnson approved of Izzo's decision to fire Fleishman. DSOF ¶¶ 35, 46. Johnson was involved in the decisionmaking process. But, unlike the situation in *Makowski*, Johnson did not know Fleishman's age or anything about his medical history at the

time Fleishman was fired. *Id.* ¶ 62. Izzo's statement does not raise the inference that Fleishman's age or medical condition had anything to do with his firing.

Accordingly, the Court grants Continental's motion for summary judgment on Fleishman's age discrimination claim.

## IV.

The Americans with Disabilities Act prohibits employers from discriminating against disabled employees because of their disability. 42 U.S.C. § 12112(a). A disabled plaintiff can prove disability discrimination by using either the direct or indirect method of proof. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011).

Here, Continental argues that Fleishman's ADA claim fails because he was not disabled. Def.'s Br. at 11. A disability is defined under the ADA as: (A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). The type of "major life activities" that must be substantially limited to fall under the purview of the ADA include, but are not limited to: caring for oneself, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2).

Fleishman claims that he had a "disability" within the meaning of all three subsections of the ADA's definition. Compl. ¶¶ 16, 22, 28. But Fleishman's summary judgment submission does not address how his brain aneurysm – specifically after he has recovered from it – qualifies as an impairment. *See* Pl.'s Br. at 12-13. The three

8

paragraphs in Fleishman's brief that are dedicated to the issue simply set forth the regulation's definition of "impairment," 29 C.F.R. § 1630.2(h), followed by Wikipedia's definition of "aneurism" (also spelled "aneurysm"). *Id.* As useful as Wikipedia is as an information source, a Wikipedia entry is not admissible evidence. Wikipedia is subject to edits by almost anyone with an Internet connection (its motto is, "the free encyclopedia that anyone can edit"). This collaborative premise is both Wikipedia's strength and potential weakness. Indeed, as visited on November 22, 2011, the Wikipedia entry for aneurysm warns, "This article may require cleanup to meet Wikipedia's quality standards," and "This article needs additional citations for verification." Fleishman does not present any *admissible* evidence that his alleged impairment "substantially limit[ed] one or more major life activities." 42 U.S.C. § 12102(1)(1); *Burnett v. LFW Inc.*, 472 F.3d 471, 483 (7th Cir. 2006) (the existence of a medical condition standing alone is not sufficient to establish disability as defined by the ADA). Fleishman refers to no affidavit, no deposition testimony, and no admissible evidence that explains how he was substantially limited in a major life activity.

Similarly, Fleishman makes a conclusory argument that he "was 'regarded as' disabled under the ADA." Pl.'s Br. at 13. The "regarded as" prong of the ADA's definition of disability addresses impairments that are not in fact disabling, but believed to be so. *Krocka v. City of Chicago*, 203 F.3d 507, 513-14 (7th Cir. 2000); *Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1008 (7th Cir. 2009) ("Under a 'regarded as' theory, the plaintiff must demonstrate either that (1) the employer mistakenly believes that the employee has an impairment that substantially limits a

9

major life activity, or (2) the employer mistakenly believes that an existing impairment, which is not actually limiting, does substantially limit a major life activity."). Fleishman fails to point to any evidence that he was treated as disabled or that management viewed him as disabled. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001) ("[I]t is not enough for a plaintiff to show that the employer knew of the plaintiff's impairment."). After returning from his medical leave in June 2004, Fleishman continued to work as a workers' compensation attorney. In 2005, Fleishman was assigned to work with the Major Case Unit, which was formed "for the purpose of handling high-value claims." DSOF ¶ 12. There is no indication that Izzo or anyone else treated Fleishman with special disfavor because of his brain aneurysm or perceived him as unable to do the work that he was assigned to do.

Fleishman argues that Izzo's June 2004 remark about retirement is evidence that Izzo regarded him as having an impairment. However, Izzo continued to supervise Fleishman for almost three years before firing him in January 2007. The alleged comment alone is not evidence that Izzo's attitude toward Fleishman changed after Fleishman returned from medical leave. Again, the fact that Fleishman was allowed to continue with his original work duties provides compelling evidence that Izzo did not view him as disabled following the brain aneurysm treatment. *See Krocka*, 203 F.3d at 514. Fleishman has not presented a triable issue as to whether Izzo regarded him as being disabled.

Finally, Fleishman argues that he is disabled under the ADA because he has a record of a substantially limiting impairment. Pl.'s Br. at 13. For an individual to

establish a disability under the ADA because of a "record of" impairment, the individual must have "a history of . . . a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *see also Kotwica v. Rose Packing Co.*, 637 F.3d 744, 748-49 (7th Cir. 2011). As discussed above, Fleishman failed to present any evidence that his brain aneurysm substantially limited a major life activity. The fact that Fleishman suffered a brain aneurysm at some earlier time in his life, years before being fired, is insufficient to by itself, as a matter of law, establish that he is disabled. Therefore, Fleishman has failed to create a genuine issue of material fact as to whether he has a record of impairment.

## V.

For the reasons stated above, Continental's motion for summary judgment [R. 66] is granted.[2]

ENTERED:

   /s/ Edmond E. Chang
Honorable Edmond E. Chang

DATE: November 22, 2011

---

[2] In light of this ruling, the Court declines to address the parties' arguments regarding the after-acquired evidence doctrine, as the issue relates solely to whether Fleishman's damages should be limited.